884 So.2d 1058 (2004)
Oscar DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-2454.
District Court of Appeal of Florida, Second District.
October 15, 2004.
James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Ronald Napolitano, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Oscar Davis challenges his conviction and sentence for aggravated battery, contending that the charging document was fatally defective and that his sentence was illegally enhanced. We hold that he was properly convicted of aggravated battery but reverse and remand for resentencing.
*1059 Mr. Davis was charged by amended information with aggravated battery with a firearm, and the jury found him guilty "as charged of Aggravated Battery (discharging a firearm causing great bodily harm)." On appeal, he contends that he was unlawfully convicted of an offense for which he was not charged and that his conviction should be reduced to the offense of simple battery.
The language of the amended information is critical in this case. The State alleged that Mr. Davis,
[o]n or about July 06, 2002[,] in Lee County, Florida, did unlawfully commit a battery upon Michel Thomas, by actually and intentionally touching or striking said person, against said person's will, or by intentionally causing bodily harm to said person, and in committing said battery did actually possess and discharge a deadly weapon, to-wit: a firearm, contrary to Florida Statute 784.045; 775.087....
Mr. Davis argues that this language could not effectively charge him with either form of aggravated battery as set out in section 784.045(1)(a)(1) or (2), Florida Statutes (2002), which provides as follows:
(1)(a) A person commits aggravated battery who, in committing battery:
1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
2. Uses a deadly weapon.
Mr. Davis's position is that the information does not precisely track the statute and that the language charging him with actually possessing and discharging a deadly weapon in committing a battery is insufficient to bring him within the statutory requirement of using a deadly weapon in committing a battery. The cases on which he relies do not address whether an information correctly charges aggravated battery but concern the availability of sentencing enhancements involving certain minimum mandatory terms for use of a firearm. See, e.g., Altieri v. State, 835 So.2d 1181, 1183 (Fla. 4th DCA 2002). In the context of whether this information properly charges an aggravated battery, however, the following explanation from Lareau v. State, 573 So.2d 813, 815 (Fla.1991), is instructive:
Under this statutory interpretation, the punishment for battery increases as the degree of actual injury or potential for serious injury becomes greater. For example, a simple battery without the use of a deadly weapon is a first-degree misdemeanor (section 784.03); a simple battery involving the use of a deadly weapon is a second-degree felony (statutory redefined by section 784.045(1)(b) [now 784.045(1)(1)(2)] as aggravated battery); aggravated battery causing great bodily harm is a second-degree felony ...; and aggravated battery causing great bodily harm and involving the use of a deadly weapon is a first-degree felony (section 784.045(1)(a), enhanced by section 775.087(1) by virtue of the use of a weapon or firearm). This interpretation gives consistent effect to both the felony reclassification statute and the provision defining aggravated battery involving the use of a deadly weapon, and it conforms with the legislative intent of increasing the punishment of violent crimes that involve a weapon or firearm.
Here, Mr. Davis was charged with committing a battery. The information further alleged that in committing that battery he actually possessed and discharged a firearm, thus creating the potential for serious injury to occur, as described by Lareau. Furthermore, the general statutory term "uses a deadly weapon" encompasses the more specific language "discharges a deadly weapon." A person can *1060 use a firearm without discharging it, see Altieri, 835 So.2d at 1183, but a person who discharges a firearm must necessarily be said to have used it.
Mr. Davis also contends, correctly, that his aggravated battery conviction could not be enhanced pursuant to section 775.087(1), which provides for reclassification of a crime from a second-degree to a first-degree felony if the defendant uses a firearm during its commission, unless "the use of a weapon or firearm is an essential element" of the crime. In Mr. Davis's case, the information charged him with intentionally causing bodily harm to the victim by discharging a firearm. Because the information did not allege that Mr. Davis caused great bodily harm to the victim, the use of the firearm was an essential element of the aggravated battery charge. See Gonzalez v. State, 585 So.2d 932, 933 (Fla.1991) ("We find that this issue is controlled by Lareau v. State, 573 So.2d 813 (Fla.1991), where we held that although aggravated battery causing great bodily harm can be enhanced pursuant to section 775.087(1) because the use of a weapon is not necessary to cause great bodily harm, the crime of aggravated battery with the use of a deadly weapon is not subject to reclassification because the use of a weapon is an essential element of the crime."); Griffin v. State, 509 So.2d 980, 981 (Fla. 2d DCA 1987) ("Since the information charged only bodily harm and not great bodily harm the addition of the charge, `in so doing used a deadly weapon,' was essential to constitute the offense of aggravated battery.").
It is apparent that the prosecution charged Mr. Davis with "actually possessing and discharging a firearm" rather than simply with "using a deadly weapon" because, in addition to reclassification, section 775.087 provides for sentencing enhancements when a firearm is possessed or used during the commission of certain enumerated crimes. However, the minimum terms mandated by the "10-20-Life" statute, section 775.087(2), cannot be legally imposed unless the statutory elements are precisely charged in the information. Whitehead v. State, 884 So.2d 139 (Fla. 2d DCA 2004); Rogers v. State, 875 So.2d 769 (Fla. 2d DCA 2004). In Altieri, 835 So.2d at 1183, the Fourth District explained the rationale as follows:
Here, the information contained an allegation that appellant "used a deadly weapon, to wit: a firearm" but it did not contain an allegation that appellant discharged a firearm or destructive device. We are not persuaded by the state's argument that the allegation that "in the process thereof used a deadly weapon, to wit: a firearm," was sufficient to place appellant on notice that he was being charged with discharging a firearm during the course of the aggravated assault. The term "used" a firearm does not necessarily mean that a person "discharged" a firearm because a person may use a firearm without discharging it. Section 775.087(2)(a)(2) applies when a person discharges the firearm or destructive device.
Here, the trial court apparently attempted to sentence Mr. Davis to a minimum mandatory term of twenty-five years to life in prison under section 775.087(2)(a)(3). The twenty-five-year-to-life sentence is mandated when the information has charged that the defendant discharged a weapon during the course of the enumerated felony and "as the result of the discharge, death or great bodily harm was inflicted upon any person." Although the jury found Mr. Davis guilty of "Aggravated Battery (discharging a firearm causing great bodily harm)," imposition of the mandatory term under section 775.087(2)(a)(3) is illegal in this case because *1061 the information did not charge death or great bodily harm. Neither a jury finding nor inclusion of the appropriate statute number in the information can cure this fatal defect. Id.; Rogers, 875 So.2d at 771; Dukes v. State, 866 So.2d 775, 776 (Fla. 1st DCA), review dismissed, 868 So.2d 523 (Fla.2004).
In light of the illegality of his sentence, Mr. Davis's position is that on remand, the trial court may not impose a sentence exceeding fifteen years' imprisonment, the statutory maximum for a second-degree felony. As the State argues, however, another section of the 10-20-Life statute applies to Mr. Davis. Section 775.087(2)(a)(2) requires that any person who is convicted of an aggravated battery, "regardless of whether the use of a weapon is an essential element of the felony, and during the course of the commission of the felony such person discharged a `firearm' ... shall be sentenced to a minimum term of 20 years." If this minimum mandatory term is greater than the maximum penalty under the Criminal Punishment Code or sentences authorized by other sections of chapter 775, "then the mandatory minimum sentence must be imposed." § 775.087(2)(c). Thus, on resentencing, the court must impose a minimum mandatory term of twenty years.
Furthermore, the State is not precluded from seeking a habitual offender sentence on remand, provided that it can prove the requisite qualifications. At the original sentencing hearing the State withdrew its notice of habitual offender sentencing specifically because the minimum mandatory of twenty-five years to life would provide a harsher sentence. Now that the defendant has challenged that sentence and this court has held it illegal, the prosecution on remand may seek and the court may impose a habitual offender sentence without violating any rights Mr. Davis might have under the Double Jeopardy Clause. In Harris v. State, 645 So.2d 386, 388 (Fla.1994), the supreme court observed that "the Double Jeopardy Clause is not an absolute bar to the imposition of an increased sentence on remand from an authorized appellate review of an issue of law concerning the original sentence. [The defendant] has not been deprived of any reasonable expectation of finality in his original sentence, nor has he been subject to repeated attempts to convict." See also Trotter v. State, 825 So.2d 362 (Fla.2002) (holding that in a new sentencing proceeding after the original sentence has been vacated by the appellate court, the trial court is not precluded from applying a drug-trafficking multiplier that it did not use in formulating the original sentence); Ellis v. State, 869 So.2d 52, 53 (Fla. 5th DCA 2004) ("Once it was determined [on appeal] that Ellis had received illegal sentences, he was not entitled to a specific sentence but only to a legal sentence."); Lloyd v. State, 844 So.2d 713, 715 (Fla. 2d DCA 2003) (Altenbernd, J., concurring) ("So long as double jeopardy is not implicated, I believe that both sides to the controversy are simply entitled to a new sentencing hearing where the necessary evidence is presented and the correct law is applied.").
Accordingly, we affirm Mr. Davis's conviction for aggravated battery with a deadly weapon but reverse and remand for resentencing.
STRINGER and SILBERMAN, JJ., Concur.